Good morning, Your Honors, and may it please the Court, my name is Myra Mossman. I'm the Court-Appointed Appellate Attorney for Mr. – for the Defendant James Sanders. There's four issues before the Court. I'd like to address the Court of Deaths via prosecutorial misconduct by Garfield. I'm having a little bit of trouble hearing you. Okay. Is that better? Yes, it is. Okay. I'd like to address the prosecutorial misconduct issue first, unless the Court has any objection. I wanted to expand on the role that the witness, Martin, played in this case. The government would have you that he was specifically talking just about the chat, but – Is there – was that – is that – are we reviewing that for plain error? Yes, we are reviewing it for plain error. I – I don't – you can use your time the way that you want, but I thought that was probably one of your weaker issues, so maybe you need to – Would you like me to – I would also like – Well, I mean, number one, no one objected, so it's plain error. And it's – you're always pushing a rock uphill a little bit on the vouching, so tell us why it's so egregious, because you've got to get over plain error. Well, I think – to me, the egregiousness has to do with the fact that we're talking about a cooperating witness. But here you have – I mean, I guess I tend to agree with Judge Callahan as to what I would like to know more about. As far as I can tell, there was – I mean, this witness was simply testifying to what a bunch of e-mails that were separately introduced could have shown – did show, anyway. He was just putting some context on them, and I don't know what difference it all made. Well, he actually testified to more than that. He testified to telephone conversations with the defendant. That's at Pellis Excerpts of Record, Volume 2, Tab 3 at page 127 and 173. And he also testified, which is very important here, at the same volume, Tab 3 at page 134, that this was not fantasy, that this was an actual – and that this is most important, that this was an actual defendant that committed actual crimes on an actual child. This was the only defendant in the case that could say that. The defense counsel objected that there was no personal knowledge, and the court overruled. The government didn't have any witnesses that could testify that. So it was really beyond the scope of just the chats. He did put color on the chats, but the fact that he could identify this witness moved to me – moved it to the third and fourth counts, the traveling with interstate commerce. Your main concern, I take it, is with the counts that dealt with the actual molestation of the child. Correct. These are – these are all in this class. Or intended and actual. Correct. And that's actually the – The intended seems like there's just no doubt that there was plenty of evidence of that. Well, I mean, the only evidence really was that – Well, the evidence was he said he was – he intended it, before he did it, and he went. And he went, in fact. And what else do you need? I think he said he intended it, and he did go there. And he did have contact with the child. He only decided whether he did anything with the child. But whether he crossed state lines intending to do it seems pretty cut and dry. His defense was actually that this was part of his fiction, and that the – that the language that he was using in the chats was fiction. This particular witness, Martin, said it took it out of the fantasy realm. And so the intent really was for the – if you were just relying on the chats, I think that that would be not too clear. In fact, when he did cross state lines, there was no direct evidence that he did these types of harm. And he did one type. He did these types of harm to the child. I just – well, we'll get to that. But the question is whether he intended to. I – the objection was that he – Now, what about the – the only actual sufficiency argument you're making is as to a thing, as to the actual abuse, as opposed to the intended abuse? Excuse me, Your Honor, I didn't – Are you making a sufficiency argument with regard to the intended abuse or only with regard to the actual abuse? We're making a sufficiency – well, we did – we made a sufficiency argument on the intent and on the actual abuse. On the motion for judgment of Okuda, we were looking at the timelines and that the chats basically referenced back, except for the fact that Martin could put a personal face on these chats. He was the only witness that could do that. Outside of this witness, the government had the expert witness on grooming and the victim's father's – the father of the victim's child, who never actually witnessed anything and didn't have any intuitions about this except outside of the scope of the indictment. And so I think that there is plain error here. I think it would be bad practice – a bad precedent to set because this is a cooperating witness and it's distinguishable from the government's case law that they cited, particularly the government's case on Atchison doesn't stand for the fact that – Atchison actually holds that when a prosecutor vouches for the veracity of a witness and his own personal statements, that is clearly vouching. Sarno doesn't reach that issue either. It's talking about just your general witness. I guess I'm confused. I saw your vouching argument as talking about that they said that he had candor and honesty when he was testifying, that that was the voucher. The startling candor and honesty, it was the adjective startling because who was startled? That makes it a personal statement by this prosecutor because who was startled? Well, I guess when the jury's instructed what the attorneys say is not evidence, that's really – and then the attorneys argue about how they think that the people should view the evidence. They're entitled to – they're given an instruction on credibility of witnesses. You know, you're said you can look at how the person testifies, you can look at inconsistencies. I just see this as a very weak vouching argument as far as that goes. Yes, Your Honor, but in Kerr and in the new case that was just recently cited in Navarro, it said that those charges to the jury – Okay, but what was the vouching in those cases? The vouching was talking about the honesty of the witness. In what case? Excuse me, Your Honor. Well, the cases that you're saying support – you know, I don't get – What case do you have out there that says that that alone is plain error and prosecutorial? Kerr cites to Sintrab. That's 901 Fed Second 799 at 806. Sintrab deals with this issue. It's a little bit more egregious in Sintrab because they're going through the back and forth of actually immunizing the witness. But in this case, they're taking a cooperating witness and elevating him by saying he's immunized. Well, you know, you've obviously made a decision that this is your strong point, which I must say I find an unusual one, but maybe you want to talk about something else. Okay, let's move on to the denial of the motion to suppress. Appellate's position is that there was a continuing arrest. He was arrested at gunpoint as the government conceded in there. He was not – he was taken at gunpoint. This was – this is deemed an arrest under Burrell. He was taken at gun – I mean, when he was stopped, he was – At gunpoint. There was five officers and there was – Mr. Saunders himself testified that there was five officers with guns. And the special – They pointed their guns? Yes, at gunpoint. When the special agent agreed that there probably was, at the first instant, and then he was escorted to Massey Hall, the court – the district court determined that he was only under arrest at Massey Hall. But we – and did not – the fact of the weapons was not clear. Well, why does any of that matter? I mean, my understanding is that there were a couple of – I'm actually – what I would most like an explanation for is why there were or were not able to take the backpack. But in terms of the Marantis statements, the judge seemed to make a very set of discreet determinations about what he was letting in and what he wasn't letting in. And he let something – or she – I don't remember who it was – she, actually. What she let in were things that she either thought were spontaneous or that she thought occurred after he was released from custody. Correct. The custody was determined by – we believe that the custody was wrongly determined to be just at the Massey Hall. Our position is – But that isn't what she said. My understanding is that the – she understood that he was in custody from the time he was detained in the car. But she said those were spontaneous. And then the only ones that she said was not in custody was after he was let out of Massey Hall and after everybody was leaving and after he was told he was free to leave. Then she said that statement was when he was not in custody. She – two of the statements that were made prior to him going to Massey Hall were omitted into evidence. Because she said they were spontaneous. After he said – he said – didn't he say to him, don't say anything? I'm going to give you my answer. Don't say anything. And he said it anyway. But under Rhodes v. Innis, the – that it's the actions of the – of the law enforcement that also was – Because the issue wasn't whether he was in custody. The issue was whether the statements were spontaneous or whether they were the result of interrogation. The interrogation was the action of the officers. He was never verbally interrogated at all throughout this whole process, Your Honor. What about the validity of the taking of the backpack to begin with? The argument was that it was in plain view. Our position was they had no right to be where they were. What was in plain view? A backpack. The backpack was in the – was in the passenger slot. I understand that you don't get to take anything that's in plain view. It has to – you have to have some reason to think there's something wrong with this thing. If you saw somebody's teddy bear in the back of the car, you can just take it. It was padlocked, and it gave them a suspicion. In the affidavit, they were looking for laptops and disks. And someone – didn't they have some information that he kept his laptop in his backpack? No, I don't believe they had that information. All right. I'll ask the government when they get up with their evidence. Okay. We have expired for time. Thank you very much.  Give me a minute. Good morning, Your Honor. May it please the Court. Scott Meisler on behalf of the United States. I'd like to start with the vouching, just to close the loop on what the vouching was in Kerr. Because there are – the words candid and honest, I think, do occur in that case. But there was – I would say what I would call, you know, by the extent of the vouching, there was a challenge statement by the prosecutor. Would you say it wasn't vouching, or would you say that it was harmless? I would say both.  I think it was probably vouching. He said it was candid and honest. How would he know that, except if he knew something more about the guy than he would – you know, from his own knowledge. But so what? There was, like, reams of evidence here. Well, I would certainly agree with you, Your Honor, on the latter point. I don't think this was vouching. Perhaps it came close to the line. I mean, the one place there may not be reams of evidence, and I'd like you to talk about it, is with regard to the actual assault as a child. But this guy wasn't testifying to that. Certainly, I'm happy to address that point. I'd like to start by pointing out to the court, and I do think it's an important point, that on count four, the jury was charged and actually found in a special verdict form two alternative theories of finding the defendant guilty on count four. Attempt to commit the molestation, the assault, the penetration, and the actual penetration. The jury returned guilty verdicts on both. And I think that's an important point. And even, again, if there wasn't sufficient evidence of the penetration, we would submit, for all the reasons set forth in the brief, that there was, the jury could draw that inference. And certainly, the way the jury was instructed on the special verdict, on what a substantial step means, that all the evidence, Your Honor, discussed in the College of Defense counsel about the chat, the intent, going there, getting the laptop specifically to show it to the victim, and to go through the grooming process that was testified to by an expert before the jury, those were substantial steps, at the very least. And so count four stands, as far as sufficiency is concerned, on that basis alone. I'm happy, again, to address the specific inferences the jury could draw as to the actual penetration. But it's rather graphic. We can go into that if you'd like. But I think the intent is important. All right. So what about, just to go through what's troubling me, and then my colleagues can do the same, what about the backpack? Well, I think as an initial matter, and you may not like this response, but I don't think that issue is fairly before the Court. And I brought up here, just to make that point, the defense's motion is suppressed in the district court. This is document 111 in the district court record. And this is obviously the court point heading. It's a three- or four-page motion. And the one point heading, the one legal argument, is the defendant was arrested and that arrest was unlawful. Consequently, all fruits of that arrest, including the statements in the backpack, should be suppressed. There really was no challenge to the actual seizure of the backpack, nor to the length of time of the seizure, the slight delay in getting a search warrant, et cetera. And before this Court ---- If there was valid arrest, what about the backpack? Exactly. And I think defense counsel was candid with this Court about that. On page 38 of the appellant's brief, there was a reference to the plain view exception. But what the defense ends up saying there is that the plain view exception to the warrant requirement fails because law enforcement did not have a reasonable basis for being in a position to take that view due to the unlawful stop, removal of Mr. Sanders at gunpoint, and the unlawful arrest. So as I understand the defense's argument, I think the district court did as well by repeatedly saying what's at issue here is only the initial detention, not the search of the backpack, was that the defendant's challenge is only to the initial detention and the lawfulness of that. The reasons we've stated, I think, under any three ways of looking at this, reasonable suspicion, probable cause, or as covered by the rules set forth in Michigan v. Summers, the initial detention itself is lawful. I'm happy to address anything else the Court has questions about. Otherwise, we would submit on the brief and ask that the judgment below be affirmed. I had a couple of questions about the couple of enhancements. Let me see what they were. You're referring to the sentencing enhancements as part of the guidelines calculation? Yes. There were two in particular which were what? I'm not so sure those are being raised either, though. As I recall, they're not being raised. As I recall, the sentencing challenge before this Court are to the reasonableness of the sentence overall. That's all. And to the condition to supervise release. That seems right. But I think they are set. I think we do walk through how the district court reached the guidelines range, Your Honor. Pages 46 through 48 of the government's brief does lay out what those challenge enhancements were. I think they were to that the offense was committed while the victim was in the custody or control of the defendant. But they're not being challenged, Your Honor. I had some issues about the custody and control, actually, because it didn't seem that the child although the child was sometimes in this person's custody and control, at the times when it appeared that there was actual like the actual abuse that might have happened, he was in the parent's house. Right. I can't. That argument was thoroughly aired before the district court. I think that most of the cases, I actually haven't reviewed the cases in advance of this argument, but I do know the argument was fully aired before the district court and the court ended up overruling the defendant's objection. And not raised here. Yes. All right. Thank you. Counsel. I have nothing to add, Your Honor, unless you have any other questions. Questions? No? Okay. Thank you very much. The case of United States v. Sanders is submitted. We will go on to the first of two Dirks cases, which I gather is a complete coincidence. So Dirks v. Martinez.
judges: Noonan, Berzon, Callahan